In the Matter of SAMUEL STARK, an Attorney, Respondent.

First Department, April 8, 1927.

**Attorney and client — disciplinary proceedings — attorney suspended for one year for converting client's money to personal use.**

An attorney at law converted his client's money to his own use and concealed his receipt of the money from his client. He appears to have been of good character until this occurrence, and there is no suggestion of any other act of impropriety on his part. Under the circumstances, the ends of justice will be satisfied by suspending said attorney from practice for the term of one year.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie*, for the petitioner.

*Eugene V. Daly*, for the respondent.

DOWLING, P. J. This is a disciplinary proceeding against an attorney at law, based upon charges of professional misconduct. The facts as found by the learned official referee, and all of which we find substantiated by the record, are as follows: The respondent was admitted to the bar of the Supreme Court, First Department, in October, 1905. In 1921, Jerome C. Mendel retained respondent's firm, Gordon & Stark, to bring an action in his behalf against the Retail Millinery Association for breach of contract in failing to pay him a bonus as executive head of the association. The retainer of respondent's firm provided that the fees should be contingent, one-third of the amounts collected to be paid to respondent's firm as its compensation. The respondent was in active charge of the case through all its phases to its end. On April 26, 1924, the action was settled by an agreement in writing whereby the defendant

First Department, April, 1927.      [Vol. 220

association was to pay $2,000 to the plaintiff Mendel, $1,000 at the time of the execution of the agreement, and the remaining $1,000 thirty days from the date thereof. One thousand dollars was paid at the time the agreement was executed, and was duly accounted for to Mendel by the respondent. The remaining $1,000 was paid by check to respondent in two installments of $500 each on May 28 and June 6, 1924, respectively. He deposited these two checks in his firm's account in the Bowery and East River National Bank. The transcript of the firm's account shows that the two checks were credited in respondent's account on May thirty-first and June ninth, respectively. The petitioner's charge against the respondent is that he converted these two sums of $500 each to his own use and concealed from his client, Mendel, the fact that they had been received by him.

Respondent failed to account to his client for the $1,000 received by him on May twenty-eighth and June sixth until after October 7, 1924, when, under the spur of the petitioner's preliminary investigation, he came to an understanding with his client, Mendel, and arranged to pay him the amount due in installments.

The gist of the charge against the respondent is that he converted his client's money to his own use and concealed his receipt of the money from his client. Respondent denies that he used the money for private purposes, and he denies the concealment as alleged.

Respondent testified on cross-examination as follows: " Q. * * * is it or is it not a fact that after you collected your client's, Mendel's, money you used it for your own purposes? A. Well, I would say * * * I would say ' No.' Q. You did not? A. No." And he then goes on to state that the only reason he did not pay Mendel his money was that he did not know where the client could be communicated with.

Upon the evidence it is shown that he used the money for his personal expenses. It was deposited in his bank account May thirty-first and June ninth, $500 on each day. Between June sixteenth and June twenty-sixth, which was after the deposit of the two $500 checks of Mendel's money, he drew out an aggregate of $1,020, of which $500 was cash, and a check of $200 for office rent, and a $270 check to the order of a steamboat company to pay the expenses of his wedding trip. So that on July first the balance to respondent's credit was $268.81. The respondent married on June 26, 1924, and left the city on his wedding trip and remained away about three or four weeks. During his absence on this trip his bank balance fell as low as $6.88 — on July seventeenth. The respondent paid no part of the $1,000 to his client between its

receipt by him in May and June, 1924, and October 7, 1924, the date on which Stark was notified by the Bar Association's representative that Mendel had made a complaint against him of unprofessional conduct.

It appears that Mendel learned of respondent's receipt of the last payment of $1,000 quite accidentally. He had occasion to call at the office of the Retail Millinery Association in the latter part of September, 1924, and there learned that they had paid to respondent the final $1,000. Three days thereafter, without first communicating with respondent, he made the complaint to the Bar Association as he testifies, with the " paramount " purpose of collecting the money from Stark by a short cut. That such was his purpose is also shown by the subsequent conduct of Mendel in the matter.

After receiving the terms of the complaint against him from the Bar Association's attorney, the respondent, on October 9, 1924, wrote to his client as follows:

" New York

" Dear Jerome.— For the love of Pete, what are you trying to do to me? I phoned you today. Please call here in a friendly fashion.

Yours,

" SAM."

This letter was mailed to Jerome C. Mendel, 142 East Thirty-eighth street, care of The J. F. Thorn Company, and was answered by Mendel, but the answer could not be produced. Then followed the respondent's second letter to Mendel:

" New York, *Oct.* 14, 1924.

" Dear Jerome.— Your letter was very severe but just. If you want the matter settled, I thought I'd like you to meet me so that there would be no bitterness after it was over.

" Please come down.                          " SAM."

This was mailed to Mendel at the same address above given.

On the same day, as shown by the stamp on the envelope, the respondent sent to the assistant attorney of the committee on grievances of the Association of the Bar the following letter:

" Mr. Raymond G. Brown,

"   43 W. 43rd St.:

" Dear Sir.— I am terribly embarrassed at the contents of your letter of complaint of Mr. J. C. Mendel — too embarrassed to even dictate a reply.

" The fact is that as late as about the first of September I've been in correspondence with Mr. Mendel and endeavored to reach him on the phone.

First Department, April, 1927.      [Vol. 220

" I wrote to him stating I see him about the 17th. I didn't hear from him.

" The firm has been dissolved and some delay, it is true, was occasioned by adjustments of accounts in general.

" Personal concerns involving my children have crowded me a bit.

" But nothing to prevent Mr. Mendel getting his account. I have written him again asking him to call

           " Very truly yours,
               " SAMUEL STARK."

Mendel and respondent came together at lunch and arranged for payment of the client's money by installments. The final payments were made in March or April, 1925. On the 19th of February, 1925, the client wrote the Bar Association as follows:

" Gentlemen.— In reply to the enclosed letter of February 17.

" Mr. Stark is now repaying to me at regular intervals small amounts towards that which is owing.

" In recognition of what I consider good faith on his part, I beg that he be permitted to continue the practice of law, and that all proceedings against him be discontinued.

" He has gotten his lesson and I know his indiscretion will never be repeated.

           " Yours truly,
" Feby. 19 /25.          JEROME C. MENDEL."

Between the dates of his deposits in May and June and October, the respondent drew freely upon his bank account, and it is apparent from the transcript of his account and the list of daily balances that he used the money credit established by the deposit of the two checks of $500 each for his private use. At no time between July ninth and September fifteenth, with the exception of September second, could he have paid his client out of his bank account. The respondent, in support of his claim that he was always ready and able to pay his client, was allowed to present evidence to show the possession of other assets besides his bank account. Assuming such evidence to be relevant, it fails to establish the fact claimed. It consists of various life insurance policies, with but little, if any, cash value, and several lots at Coram Heights in the middle part of Long Island, near Port Jefferson. In further support of this claim, he testified that he owned a $1,000 Liberty bond.

While it is true the respondent finally paid back to Mendel the amount due him on his collection, the whole manner of respondent's actions throughout his dealings with Mendel after the first $1,000

had been paid to him, is unsatisfactory and shows a lack of appreciation of his trust relation with his client, which is confirmed by his own attitude during the hearing before the referee. He deposited this money in his own personal bank account and withdrew it for his own personal purposes, the record showing that within twenty days after the receipt of the final payment of $500 he withdrew $270 to pay for a honeymoon trip, and contemporaneously withdrew $300 more by check to the order " Cash."

The respondent cannot successfully contest the fact that he used this money as his own, for his own purposes, for the record is to the contrary, and it is demonstrated as well that from July 17, 1925, when his bank balance was $6.88, until after complaint had been made to the Bar Association, there was but one day, September second, when his balance would have been sufficient to pay to Mendel what he owed him. But the following day this balance was reduced to $246.17.

Further light is shed upon his financial condition by the fact that when he was finally brought to account by Mendel, he could only pay him in installments.

Respondent strenuously urges that he had no intention of converting his client's money and seeks to excuse his failure to remit by stating that he did not know where to find him. As to the first, whether he really intended to convert the money to his own use or not, the fact is that his use of the money for his own purposes, as the referee has found, was seriously irregular and unwarranted, and he took a liberty with the money of his client, who, as he thought, was also his friend. Furthermore, the excuse given by respondent that he was unable to communicate with his client because he did not know where to find him, is shown to be false both by the fact that he had his address and knew where to write him after he received notice of the complaint to the Bar Association herein, and further by the fact that in his letter to the assistant attorney of the committee on grievances for the Bar Association, Mr. Brown, he stated he had been in correspondence with Mr. Mendel as late as about the first of September, and endeavored to reach him on the phone. It is obvious that this claim that he did not know where to reach Mendel was an afterthought and was not true.

In my opinion the respondent was not frank in his testimony before the referee and the charges made against him are fully sustained by the evidence.

There is to be taken into consideration the fact that though respondent did not act to make restitution to his client until the matter had been brought by the latter to the attention of the committee on grievances of the Bar Association, still he did make

a satisfactory settlement with his client after that step had been taken.

The respondent appears to have been an attorney of good character until this occurrence, and there is no suggestion of any other act of impropriety on his part.

I am, therefore, of the opinion that, finding him guilty of the charges as made, the end of justice will be satisfied by a suspension from practice for the term of one year, with leave to apply for reinstatement at the expiration of that term, upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.

Finch, McAvoy, Martin and O'Malley, JJ., concur.

Respondent suspended for one year, with leave to apply for reinstatement at the expiration of that term, upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.   Settle order on notice.